1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  WINDMILL HEALTH PRODUCTS, LLC,        No. C-15-0574 MMC

12          Plaintiff,                    **ORDER GRANTING PLAINTIFF'S**
                                          **MOTION FOR SUMMARY JUDGMENT;**
13      v.                                **DENYING DEFENDANT'S CROSS-**
                                          **MOTION FOR SUMMARY JUDGMENT;**
14  SENSA PRODUCTS (ASSIGNMENT FOR        **VACATING HEARING**
    THE BENEFIT OF CREDITORS), LLC,
15
            Defendant.
16  _____/

17
        Before the Court is plaintiff Windmill Health Products, LLC's ("Windmill") motion for

18  summary judgment, filed September 8, 2015, and defendant Sensa Products (Assignment

19  for the Benefit of Creditors), LLC's ("the Assignee") cross-motion for summary judgment,

20  filed September 22, 2015.[1]  The motions have been fully briefed.  Having read and

21  considered the papers filed in support of and in opposition to the motions, the Court deems

22  the matters suitable for determination on the parties' respective written submissions,

23  VACATES the hearing scheduled for October 30, 2015, and rules as follows.

24  _____

25      [1]Although the document the Assignee filed on September 22, 2015, is titled
    "Opposition to Plaintiff Windmill Health Products, LLC's Motion for Summary Judgment,"
26  the filing also includes what is in essence a cross-motion for summary judgment in favor of
    the Assignee (see Def.'s Opp. at 2:24), as was contemplated by the parties and the Court
27  at the Further Case Management Conference conducted August 7, 2015 (see Minutes, filed
    August 7, 2015 (setting forth deadlines of September 8, 2015, for Windmill to file "motion
28  for summary judgment" and September 22, 2015, for the Assignee to file "Opposition/Cross
    Motion for Summary Judgment")).

1

**BACKGROUND**[2]

2
3
4
5
6
7
8
9
10
11
      On May 1, 2014, Windmill filed in state court a complaint against Sensa, Inc. and Sensa Products, LLC (collectively, "Sensa Products").  (See Ottaunick Decl., filed September 8, 2015, Ex. C.)  On August 6, 2014, Windmill and Sensa Products entered into a Settlement Agreement (see id. Ex. D), under which agreement Sensa Products, inter alia, agreed to "pay Windmill the sum of $2,500,000, payable in twelve monthly payments of $200,000 and one final payment of $100,000" (see id. Ex. D at 2).  Pursuant to the Settlement Agreement, Sensa Products, on August 22, 2014, wired $200,000 to Windmill (see id. ¶ 8), and, on September 1, 2014, wired a second payment of $200,000 to Windmill (see id. ¶ 9).  Sensa Products failed, however, to make the third required installment payment.  (See id. ¶ 10.)

12
13
14
15
16
17
18
19
      "On or about November 17, 2014, Windmill received notice that Sensa Products [had] made a general assignment for the benefit of creditors pursuant to California state law."  (Id. at ¶ 11.)  On January 29, 2015, counsel for the Assignee wrote Windmill, asserting that Windmill was obligated, under § 1800(b) of the California Code of Civil Procedure, to "return[ ] to the Assignment estate" the $400,000 Sensa had paid to Windmill, which payments the Assignee referred to as "Preference Payments," and advising Windmill that "to avoid any adverse legal action," Windmill must return the $400,000 "within thirty (30) days of [Windmill's] receipt of [the] letter."  (See id. Ex. E.)

20
21
      On February 5, 2015, Windmill filed the instant action, seeking a declaration that it was not obligated to return the $400,000 to the Assignee.  (See Compl. ¶¶ 9-10, 13, 16.)

22

**LEGAL STANDARD**

23
24
25
26
      Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).

27

28

_____

[2]The following facts are undisputed.

2

1    The Supreme Court's 1986 "trilogy" of <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986),

2    <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), and <u>Matsushita Electric Industrial Co.</u>

3    <u>v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986), requires that a party seeking summary

4    judgment show the absence of a genuine issue of material fact.  Once the moving party

5    has done so, the nonmoving party must "go beyond the pleadings and by [its] own

6    affidavits, or by the depositions, answers to interrogatories, and admissions on file,

7    designate specific facts showing that there is a genuine issue for trial."  <u>See</u> <u>Celotex</u>, 477

8    U.S. at 324 (internal quotation and citation omitted).  "When the moving party has carried

9    its burden under Rule 56[ ], its opponent must do more than simply show that there is some

10   metaphysical doubt as to the material facts."  <u>Matsushita</u>, 475 U.S. at 586.  "If the

11   [opposing party's] evidence is merely colorable, or is not significantly probative, summary

12   judgment may be granted."  <u>Liberty Lobby</u>, 477 U.S. at 249-50 (citations omitted).

13   "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light

14   most favorable to the party opposing the motion."  <u>See</u> <u>Matsushita</u>, 475 U.S. at 587

15   (internal quotation and citation omitted).

16                                              **DISCUSSION**

17          Section 1800 of the California Code of Civil Procedure is a "statutory scheme for

18   recovery of avoidable preferences by an assignee for the benefit of creditors."  <u>See</u>

19   <u>Angeles Electric Co. v. Superior Court</u>, 27 Cal. App. 4th 426, 430 (1994).  Pursuant to

20   § 1800(b), "the assignee of any general assignment for the benefit of creditors . . . may

21   recover any transfer of property of the assignor" under specified circumstances.  <u>See</u> Cal.

22   Civ. Proc. Code § 1800(b).  As set forth above, the Assignee contends Windmill is

23   obligated, under § 1800(b), to return to the Assignee the $400,000 Sensa had paid to

24   Windmill under the terms of the Settlement Agreement.  By its motion, Windmill seeks a

25   finding that § 1800(b) is preempted by the Bankruptcy Code, and, consistent therewith, a

26   declaration that it is not obligated to return to the Assignee the subject $400,000.  By its

27   cross-motion, the Assignee seeks a finding that § 1800(b) is not preempted.

28   //

                                                    3

1    The Ninth Circuit has considered the precise issue presented in the instant case.  In

2  Sherwood Partners, Inc. v. Lycos, Inc., 394 F.3d 1198 (9th Cir.), cert. denied, 546 U.S. 927

3  (2005), the Ninth Circuit held that § 1800(b) "is preempted by the Bankruptcy Code," see id.

4  at 1206, and, accordingly, directed the district court therein to dismiss a claim in which the

5  assignee alleged the defendant was obligated under § 1800(b) to return to the assignee

6  payments previously made to the defendant by the debtor, see id. at 1200, 1206.

7    In so holding, the Ninth Circuit observed that chapter 7 of the Bankruptcy Code

8  provides for the equitable distribution of a debtor's assets among competing creditors, see

9  id. at 1203, and that "the power to avoid preferential transfers" is given to the bankruptcy

10  trustee upon a filing of a bankruptcy petition, see id. at 1204 (citing 11 U.S.C. § 547(b)).  As

11  the Ninth Circuit explained, "if a state assignee under § 1800 recovers a preferential

12  transfer and distributes its proceeds to creditors, this will preclude a federal trustee from

13  recovering the same sum under the federal preferential statute if a federal bankruptcy

14  proceeding is begun."  See id. at 1204.  The Ninth Circuit further explained that Congress,

15  in enacting the Bankruptcy Code, had "carefully delineate[d] the circumstances under which

16  federal bankruptcy proceedings are to be initiated," and that § 1800(b) interfered with the

17  "statutory incentives" in a manner Congress had not "contemplated."  See id. at 1205

18  (noting that once § 1800(b) proceedings are instituted, they "will affect the incentives of

19  various parties as to whether they wish to avail themselves of federal bankruptcy law").

20  In sum, the Ninth Circuit found that § 1800(b) could not "peacefully coexist" with the

21  Bankruptcy Code.  See id. at 1202, 1206.

22    Windmill argues that this Court is bound by the Ninth Circuit's decision in Sherwood

23  Partners and likewise must find § 1800(b) is preempted.  See Hart v. Massanari, 266 F.3d

24  1155, 1170 (9th Cir. 2001) (holding "[b]inding authority must be followed unless and until

25  overruled by a body component to do so").

26    The Assignee argues that this Court is not bound by Sherwood Partners, and

27  instead should find persuasive two decisions of the California Court of Appeal, specifically,

28  Haberbrush v. Charles and Dorothy Cummings Family Ltd. Partnership, 139 Cal. App. 4th

4

1    1630 (2006) and <u>Credit Managers Ass'n v. Countrywide Home Loans, Inc.</u>, 144 Cal. App.

2    4th 590 (2007), each of which considered the reasoning set forth in <u>Sherwood Partners</u>,

3    declined to follow <u>Sherwood Partners</u>, and found, instead, that § 1800(b) is not preempted

4    by the Bankruptcy Code.  <u>See</u> <u>Haberbrush</u>, 139 Cal. App. 4th at 1637 (2006)

5    ("disagree[ing] with the analysis in <u>Sherwood Partners</u>"; finding it "impossible to conclude

6    that Code of Civil Procedure section 1800 is inconsistent with the essential goals and

7    purposes of federal bankruptcy law") (internal quotation and citation omitted); <u>see</u> <u>also</u>

8    <u>Credit Managers Ass'n</u>, 144 Cal. App. 4th at 598 (noting federal court of appeals'

9    "decisions on federal questions are persuasive authority, but they are not binding on [state

10   appellate] court[s]"; finding "the <u>Haberbrush</u> court's analysis of the issue more

11   persuasive").

12       The Assignee argues <u>Sherwood Partners</u> is "distinguishable" because it is now

13   "contrary" to "well-established California case law."  (<u>See</u> Def.'s Opp. at 8:21 - 9:13.)  In

14   support thereof, the Assignee relies on "the rule that when (1) a federal court is required to

15   apply state law, and (2) there is no relevant precedent from the state's highest court, but (3)

16   there is relevant precedent from the state's intermediate appellate court, the federal court

17   must follow the state intermediate appellate court decision unless the federal court finds

18   convincing evidence that the state's supreme court likely would not follow it."  <u>See</u> <u>Ryman</u>

19   <u>v. Sears, Roebuck & Co.</u>, 505 F.3d 993, 994 (9th Cir. 2007).

20       In this instance, however, the Assignee's reliance on the above-referenced authority

21   is misplaced.  The rule on which the Assignee relies pertains when the legal issue

22   presented is an issue of "state law."  <u>See</u> <u>id</u>. at 995 (holding, in reliance on decision of

23   Oregon "intermediate appellate court," Oregon Family Leave Act provided cause of action

24   for retaliatory discharge).  The principle underlying the rule is that the "highest state court is

25   the final authority on state law," <u>see</u> <u>Fidelity Union Trust Co. v. Field</u>, 311 U.S. 169, 177

26   (1940), and, consequently, all federal courts, including the United States Supreme Court,

27   are bound by decisions issued by the highest state court on issues of state law, <u>see</u>, <u>e.g.</u>,

28   <u>Crane v. Campbell</u>, 245 U.S. 304, 307 (1917) (holding, where petitioner challenged

1    constitutionality of state statute, statute's "validity under the state Constitution is not open

2    for [the United States Supreme Court's] consideration").

3        By contrast, the issue of whether a state statute is preempted by federal law is not

4    an issue of state law, but, rather, one of federal law, see Local Union 598 v. J.A. Jones

5    Construction Co., 846 F.2d 1213, 1218 (9th Cir. 1988) (holding "preemption is a question of

6    federal law"), specifically, an issue arising under the "Supremacy Clause of the United

7    States Constitution," see Ferguson v. Corinthian Colleges, Inc., 733 F.3d 928, 932 (9th Cir.

8    2013).  Consequently, a decision by the highest state court as to whether a state statute is

9    preempted is not binding on federal courts, see, e.g., Sears, Roebuck & Co. v. San Diego

10   County District Council, 436 U.S. 180, 183-84, 207 (1978) (reviewing California Supreme

11   Court's decision that state trespass law, as applied to particular type of picketing activity,

12   was preempted by National Labor Relations Act), whereas a decision by the Ninth Circuit

13   that a state statute is preempted by federal law is binding on district courts even where the

14   highest court of the state has held to the contrary, see, e.g., Moore v. Dollar Tree Stores

15   Inc., 85 F. Supp. 2d 1176, 1193 (E.D. Cal. 2015) (holding, where Ninth Circuit and

16   California Supreme Court had reached different conclusions as to whether state statute

17   was preempted by federal law, district court was "bound by the Ninth Circuit's decision").

18   Indeed, the Supreme Court made the distinction clear in Erie v. R. Co. v. Tompkins, 304

19   U.S. 64 (1938), in which it held that district courts sitting in diversity must apply state law

20   "[e]xcept in matters governed by the Federal Constitution or by acts of Congress."  See id.

21   at 78 (emphasis added).[3]

22       Accordingly, in light of the Ninth Circuit's decision in Sherwood Partners, the Court

23   finds § 1800(b) of the California Code of Civil Procedure is preempted, and, consequently,

24   will grant Windmill's motion for summary judgment and deny the Assignee's cross-motion

25   for summary judgment.

26   //

27   _____

28       [3]The Court has diversity jurisdiction over Windmill's complaint.

**CONCLUSION**

For the reasons stated above:

1.  Windmill's motion for summary judgment is hereby GRANTED; the Assignee's cross-motion for summary judgment is hereby DENIED; and

2.  Windmill is not obligated to return to the Assignee either the August 22, 2014, payment by Sensa in the amount of $200,000 or the September 1, 2014, payment by Sensa in the amount of $200,000.

**IT IS SO ORDERED.**

Dated:  October 27, 2015

_____

MAXINE M. CHESNEY
United States District Judge

7